Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| LUIS E. PAGÁN RIVERA<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300084 | Revisión procedente de la Oficina de Clasificación del Departamento de Corrección<br><br>Caso de ref. Núm.: T4-17696<br><br>Sobre:<br>Revisión Administrativa |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 28 de abril de 2023.

Comparece el señor Luis E. Pagán Rivera (el recurrente) y nos solicita revisemos una determinación de la Oficina de Clasificación de Confinados del Departamento de Corrección y Rehabilitación del Estado Libre Asociado de Puerto Rico (OCC) notificada el 27 de enero de 2023.[1] En esta, la OCC se reiteró en su posición en cuanto a que el recurrente no reúne los requisitos necesarios para ser considerado para libertad bajo palabra y, por lo tanto, debía permanecer en una institución de custodia mediana. Por los fundamentos que abordaremos, consideramos que incurrió en error la OCC al no tomar en consideración lo dispuesto por la Ley Núm. 85-2022, por lo que devolvemos el caso a dicha entidad para la correspondiente evaluación sobre si procede o no la reclasificación de custodia del peticionario.

---

[1] Véase apéndice de *Revisión Administrativa*, p. 13.

-I-

El 12 de noviembre de 2012 el Tribunal de Primera Instancia, Sala Superior de San Juan, sentenció al peticionario a cumplir diferentes penas, a saber: 1 año y 9 meses de reclusión por infracción al Art. 3.1 de la Ley Núm. 54-1989; 10 años de reclusión por infracción a la a la Tentativa al Art. 106 en segundo grado del Código Penal de 2004; 20 años de reclusión por infracción al art. 5.04 de la Ley de Armas del 2000, los cuales, conforme a las disposiciones del Ar. 7.03 de la referida Ley se duplicaron a 40 años; 10 años de reclusión por infracción al art. 5.15 de la Ley de Armas del 2000, el cual se duplicó a 20 años; 10 años de reclusión por infracción al art. 5.15 de la Ley de Armas del 2000, el cual se duplicó a 20 años; y 90 días de reclusión por infracción al Art. 207 del Código Penal de 2004. Lo anterior para un total de 91 años, 9 meses y 90 días de reclusión.

Así, y poco más de 10 años luego de que el peticionario fuera sentenciado, el 27 de diciembre de 2022 el Comité de Clasificación y Tratamiento (el Comité) determinó que, al amparo del Manual para la Clasificación de Confinados #9151 del 22 de enero de 2022, este debía permanecer en custodia mediana.[2] También, destacó que la reevaluación de custodia no necesariamente tiene como resultado un cambio en la Clasificación de la Custodia de un miembro de la comunidad correccional, pues su función primordial es supervisar la adaptación del confinado y prestarle atención a cualquier situación pertinente que pueda surgir. Finalmente, concluyó que:

> *"Al evaluar el caso del confinado en referencia se toma en consideración que cuenta con una sentencia de 91 años 9 meses 90 días de los cuales ha cumplido 11 años 8 días. La Escala de Reclasificación de Confinados lo ubica en un nivel de custodia Mediana por aplicar modificación no discrecional ya que le faltan más de 15 años antes de la fecha máxima de Libertad Bajo Palabra lo cual lo ubica en un nivel de Custodia Mediana. Cabe señalar que el confinado no ha sido objeto de informes de indisciplina o querellas administrativas durante su reclusión. Además, ha cumplido con su Plan Institucional*

---

[2] Véase apéndice de *Revisión Administrativa*, pp. 1-7.

*en cuanto a Tratamientos, Trabajo, Estudio y Conducta."*

Ante la decisión del Comité, el 28 de diciembre de 2022, el peticionario presentó su *Recurso en Reconsideración* por entender que el mencionado ente erró al no reclasificar su custodia al nivel menos restrictivo de custodia mínima.[3] Arguyó, además, que no se tomaron en cuenta los cambios incorporados por la Ley Núm. 85 del 11 de octubre de 2022, la cual dispone los nuevos términos para acceder a la jurisdicción y evaluación de la Junta de Libertad Bajo Palabra y que, en su caso, el referido estatuto le coloca fuera de la modificación no discrecional de que aún debe de cumplir 15 años para ser evaluado por esta. Por lo tanto, solicitó que su caso fuera reevaluado y atemperado al referido estatuto.

No obstante, lo anterior, el 11 de enero de 2023 la OCC informó que no acogería la solicitud de reconsideración, pues el mínimo de su sentencia sería el 19 de abril de 2049 y el máximo el 17 de mayo de 2083. Por lo tanto, destacó que al momento de la evaluación el peticionario aún debía cumplir 26 años, 3 meses y 22 días para ser considerado por la Junta de Libertad Bajo Palabra y que era necesario que permaneciera en custodia mediana hasta que le restaran 15 años o menos para ser considerado a reclasificación para custodia mínima. Destaca la OCC que, a modo de excepción, un confinado que haya cumplido 10 años clasificado en custodia mediana puede ser reclasificado a custodia mínima, pero que esto no le aplicaría al peticionario ya que fue asignado el 28 de diciembre de 2017 a custodia mediana y, consecuentemente, no cualifica para la excepción. Finalmente, concluyó indicando que no ha recibido instrucciones en cuanto a la aplicabilidad de la Ley Núm. 85-2022 ya que, a su entender, la misma se encuentra en contravención con

---

[3] Véase apéndice de *Revisión Administrativa*, pp. 11-13.

otras leyes y reglamento que cobijan al ente administrativo y resolvió que concurría con el Comité en cuanto a lo pertinente a la custodia.

Inconforme, acude el peticionario ante este primer foro apelativa y alega que la OCC incidió de la siguiente manera:

> *Erró el Departamento de Corrección y Rehabilitación, y el CCT al realizar una evaluación y determinación sin tomar en consideración lo establecido en la Ley Núm. 85 de 2022, la cual entró en vigencia el 11 de octubre 2022.*

En cuanto a esto, destacó el peticionario que su evaluación arrojó una puntuación de cero puntos, por lo cual su nivel de custodia debía ser reducido de custodia mediana a custodia mínima. También, arguyó que con la entrada en vigor de la Ley Núm. 85-2022 y su disposición a los efectos de que la misma aplicaría retroactivamente en todo aquello que favorezca a la persona condenada, solo tenía que cumplir con una de sus convicciones de 20 años por infracción a la Ley de Armas de 2000 para acceder a la jurisdicción de la Junta de Libertad Bajo Palabra.[4] Por lo tanto, y amparándose a la sección primera de la Ley Núm. 85-2022, nos solicita que revoquemos la determinación administrativa por entender que la misma es contraria al referido estatuto.

Por su parte, y en representación del Departamento de Corrección y Rehabilitación, arguye la Oficina del Procurador General que al momento de ser evaluado en diciembre de 2022, el recurrente tenía que cumplir, como mínimo, hasta el 2049 para ser elegible para la Junta de Liberta Bajo Palabra. No obstante, destaca que a la luz de la Ley Núm. 85-2022, el nuevo término mínimo para ser elegible a la Junta sería el cumplimiento del 75% de su sentencia mayor. Es decir, resultaría elegible tras cumplir 30 años del término de 40 años impuesto como resultado de su contravención al Art. 5.04 de la Ley de Armas de 2000. Ahora, trae a nuestra atención el Procurador General que la Ley Núm. 85-2022 dispone que el mínimo

---

[4] En su comparecencia ante este foro, el peticionario obvia que la pena mayor por sus sentencias por infracciones a la Ley de Armas de 2000 es de 40 años.

para ser elegible a la Junta nunca debe exceder 15 años y que cuando el peticionario fue evaluado le restaban menos de 15 años para ser elegible a la Junta. Por lo tanto, nos solicita que devolvamos la petición de reclasificación a la DCR para que la agencia administrativa evalúe la procedencia de todo el conjunto de factores y modificaciones a la luz de las disposiciones de la Ley Núm. 85-2022.

-II-

-A-

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Oficina de Ética Gubernamental v. Martínez Giraud*, 2022 TSPR 93 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923 (2010). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *Oficina de Ética Gubernamental v. Martínez Giraud, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta, por lo que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

Por esa misma línea, en *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606 (2016), nuestro Tribunal Supremo resumió las normas

básicas en torno al alcance de la revisión judicial de la forma siguiente:

> *Los tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.*

Del mismo modo, el criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Oficina de Ética Gubernamental v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra; *Graciani Rodríguez v. Garaje Isla Verde, supra*; *Torres Rivera v. Policía de PR, supra*. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Oficina de Ética Gubernamental v. Martínez Giraud, supra*; *Super Asphalt v. AFI y otros, supra*; *Graciani Rodríguez v. Garaje Isla Verde, supra*; *Rolón Martínez v. Supte. Policía, supra*; *Batista, Nobbe v. Jta. Directores, supra*. Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), estableció el marco de revisión judicial de las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra*. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd*; *Oficina de Ética Gubernamental*

*v. Martínez Giraud, supra; Torres Rivera v. Policía de PR, supra; Nobbe v. Jta. Directores, supra;* Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Así, esta intervención debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley. *Rolón Martínez v. Supte. Policía, supra.* Por lo tanto, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd; Oficina de Ética Gubernamental v. Martínez Giraud, supra; Super Asphalt v. AFI y otros, supra.*

Ahora bien, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR,* supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía, supra; Torres Rivera v. Policía de PR, supra.* Esto, pues el Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd; Oficina de Ética Gubernamental v. Martínez Giraud, supra.* Finalmente, destacamos que el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Lo anterior ya que la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder

ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia. *Íd.*

-B-

En cuanto al principio de favorabilidad, nuestro Tribunal Supremo lo siguiente:

> *En armonía con la doctrina continental europea, al derogar el Código Penal que regía desde el 1902, adoptamos en Puerto Rico el "principio de favorabilidad", que quedó consagrado en el Art. 4 del Código Penal de 1974, (33 L.P.R.A ant. sec. 3004). Pueblo v. González, 165 DPR 675, 684 (2005). Posteriormente, el Art. 9 del Código Penal de 2004, (33 LPRA ant. sec. 4637) introdujo una disposición de más amplio alcance en cuanto al principio de favorabilidad. Pueblo v. Torres Cruz, 194 DPR 53 (2015)*

Añadió el Tribunal Supremo de Puerto Rico en el precitado caso, que, dicho principio se encuentra regulado actualmente por el Artículo 4 del Código Penal de 2012, 33 LPRA sec. 5004, el cual dispone, en lo aquí pertinente, lo siguiente:

> *La ley penal aplicable es la vigente al momento de la comisión de los hechos.*
>
> *La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:*
>
> *(a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.*
>
> *(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.*
>
> *(c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad.*
>
> *En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. Id.*

Conforme al principio de favorabilidad, procede la aplicación retroactiva de una ley penal cuando favorece a la persona imputada de delito. *Pueblo v. Hernández García*, 186 DPR 656 (2012). A esos fines, comenta el Prof. Luis Ernesto Chiesa Aponte que ese principio tiene como propósito evitar la aplicación arbitraria e irracional de la ley penal, ya que el principio republicano de gobierno exige la

racionalidad de la acción del estado y esta es afectada cuando, por la mera circunstancia de que un individuo haya cometido el mismo hecho con anterioridad a otro, se le trate más rigurosamente. L.E. Chiesa Aponte, *Derecho penal sustantivo*, 2da ed., San Juan, Pus. JTS, 2013, pág. 59, citando a E. R. Zaffaroni, *Derecho Penal*, Parte general, 2da ed., Buenos Aires, Ed., Ediar, 2002, pág. 122. *Id.*, págs. 59-60.

No obstante, a diferencia de la prohibición constitucional de leyes *ex post facto* que contiene el Art. II, Sec. 12 de la Constitución de Puerto Rico, LPRA Tomo 1, el principio de favorabilidad corresponde a un acto de gracia legislativa, cuyo origen es puramente estatutario. *Pueblo v. González, supra*. De esa manera, le corresponde a la Asamblea Legislativa establecer y delimitar el rango de aplicación del principio de favorabilidad. *Id.*

Por otra parte, la Prof. Dora Nevares-Muñiz comenta que el principio de favorabilidad incluido en el Art. 4 del Código Penal de 2012, *supra*, aplicará a conducta delictiva realizada a partir del 1 de septiembre de 2012 cuando se apruebe una ley que sea más favorable que el Código Penal según vigente al momento de aprobación de la ley posterior con respecto a la situación de la persona. D. Nevares-Muñiz, *Derecho penal puertorriqueño*, 7ma ed. rev., San Juan, Inst. para el Desarrollo del Derecho, Inc., 2015, pág. 102. Adicionalmente, y conforme al texto del Art. 4 del Código Penal vigente, *supra*, la ley favorable puede surgir mientras se está procesando al imputado, al momento de imponerle la sentencia o durante el término en que se cumple. Art. 4 del Código Penal, *supra*; L.E. Chiesa Aponte, *Derecho Penal Sustantivo*, *op cit.*, pág. 66. Asimismo, los cambios que se aplicarán retroactivamente pueden ser en cuanto a la tipificación del delito, sus atenuantes, las causas de exclusión de responsabilidad, los requisitos de prueba, las penas, así como disposiciones procesales. D. Nevares-Muñiz,

Código Penal de Puerto Rico, 3ra ed. rev., San Juan, Inst. para el Desarrollo del Derecho, 2015, pág. 10. *Id.*

Dicho de otro modo, lo que el mencionado postulado nos indica es que, si una ley penal, cuyos efectos resultan en un tratamiento más favorable para una persona acusada, se aprueba con posterioridad a la comisión de los hechos delictivos, esta se debe aplicar retroactivamente, de modo que la persona acusada disfrute de sus beneficios. *Pueblo v. DiCristina Rexach,* 204 DPR 779 (2020).

Ahora bien, y al igual que el derecho penal norteamericano, nuestro derecho estatutario también contempla cláusulas de reserva generales que aseguran la aplicación de leyes que han sido derogadas o enmendadas a aquellos hechos ocurridos durante el período en que las mismas estuvieron formalmente vigentes. *Pueblo v. González, supra.*[5] Así, mediante la incorporación de las cláusulas de reserva en los códigos penales se ha advertido la intención del legislador de imponer limitaciones al principio de favorabilidad. *Pueblo v. González,* supra, págs. 698-699; D. Nevares-Muñiz, *Derecho Penal Puertorriqueño, op cit.*, pág. 102. Por consiguiente, es razonable concluir que, en nuestra jurisdicción, la aprobación de cláusulas de reserva opera como una limitación al principio de favorabilidad; principio que, al carecer de rango constitucional, está dentro de la prerrogativa absoluta del legislador. *Pueblo v. González, supra.* Finalmente, destacamos que en *Pueblo v. Negrón Rivera*, 183 DPR 271 (2011), el Tribunal Supremo aclaró que la cláusula de reserva que contiene el Art. 303 del Código Penal de 2012, 33 LPRA sec. 5412, no tiene el alcance de impedir que aplique en este caso el principio de favorabilidad. Dicha cláusula de reserva lo que prohíbe es que se utilicen las disposiciones del Código Penal de

---

[5] El Código Penal de Puerto Rico de 2012 contempla la cláusula de reserva en el Artículo 303. El derogado Código Penal de 2004 también contemplaba la referida cláusula de reserva, en el Artículo 308.

2012 para juzgar la conducta cometida mientras estuvo vigente el Código Penal de 2004.

Por su parte, el Artículo 303 del vigente Código Penal de 2012[6], según enmendado, dispone lo relacionado a la aplicación de este Código en el tiempo. Específicamente, dicho artículo dispone, lo siguiente:

> *La conducta realizada con <u>anterioridad</u> a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes <u>vigentes al momento del hecho</u>. (Énfasis nuestro).*
>
> *Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona.  Sólo se entenderá que un delito ha sido suprimido cuando la conducta imputada no constituiría delito alguno bajo este Código.  El hecho de que se le cambie el nombre o denominación a un delito, o que se modifique la tipificación del mismo no constituirá la supresión de tal delito.*

-C-

En lo pertinente al caso de autos, dispone el Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, Ley Núm. 404-2000, que:

> *Toda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años, sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.*
>
> *No obstante, cuando se trate de una persona que (i) esté transportando o portando un arma de fuego que está registrada a su nombre, (ii) tenga una licencia de armas o permiso para portar armas expedido a su nombre que está vencido o expirado, (iii) no se le impute la comisión de cualquier delito grave que implique el uso de violencia, (iv) no se le impute la comisión de un delito menos grave que implique el uso de violencia, y (v) el arma de fuego transportada o portada no esté alterada ni mutilada, dicha persona incurrirá en un delito menos grave y, a discreción del Tribunal, será*

---

[6] Este artículo mantiene el mismo texto del primer párrafo y la última oración del Artículo 308 del Código de 2004. Se eliminó el texto que disponía que, "si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona". Dora Nevares Muñiz, *Código Penal de Puerto Rico*, Ed. 2012, Instituto para el Desarrollo del Derecho, Inc., págs. 428-429.

*sancionada con una pena de cárcel que no excederá de seis (6) meses o una multa de cinco mil dólares ($5,000.00).*

Asimismo, el Art. 5.15 del antes referido estatuto dispone que:

*(A) Incurrirá en delito grave toda persona que, salvo en casos de defensa propia o de terceros o de actuaciones en el desempeño de funciones oficiales o de actividades legítimas de deportes, incluida la caza, o del ejercicio de la práctica de tiro en un club de tiro autorizado:*

*(1) voluntariamente dispare cualquier arma en un sitio público o en cualquier otro sitio, aunque no le cause daño a persona alguna, o*

*(2) intencionalmente, aunque sin malicia, apunte hacia alguna persona con un arma, aunque no le cause daño a persona alguna. La pena de reclusión por la comisión de los delitos descritos en los incisos (1) y (2) anteriores, será por un término fijo de cinco (5) años.*

*De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.*

*Disponiéndose que, aquella persona que cometa el delito descrito en el inciso (1) anterior, utilizando un arma de fuego y convicto que fuere, no tendrá derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta.*

*Del mismo modo, cuando una persona cometa el delito descrito en el inciso (2) anterior, utilizando un arma de fuego, mediando malicia y convicto que fuere, no tendrá derecho a sentencia suspendida, a salir en libertad bajo palabra o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta.*

Finalmente, y en lo aquí pertinente, dispone el Art. 7.03 de esta ley que:

*Todas las penas de reclusión que se impongan bajo esta Ley serán cumplidas consecutivamente entre sí y consecutivamente con las impuestas bajo cualquier otra ley. Además, si la persona hubiere sido convicta anteriormente por cualquier violación a esta Ley o por cualquiera de los delitos especificados en el Artículo 2.11 de esta Ley o usare un arma en la comisión de cualquier delito y como resultado de tal violación alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará. Toda violación a esta Ley en una zona escolar o universitaria según definida en el Artículo 1.02, conllevará el doble de la pena establecida.*

-D-

En su exposición de motivos, la Ley Núm. 85-2022, dispone que la misma fue promulgada para cumplir con la política pública

constitucional de la rehabilitación que debe traducirse en un andamiaje penal más humano en la implementación de las penas, pero sin obviar la responsabilidad de la persona ante el gobierno por sus acciones delictivas. Esencialmente, el referido estatuto enmendó el artículo 308 la Ley Núm. 146-2012, conocido como el Código Penal de Puerto Rico, y el artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, conocida como la Ley de la Junta de Libertad Bajo Palabra.

En ese sentido, el Art. 308 del Código Penal vigente dispone que:

> *Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.*
>
> *En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.*
>
> *En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.*
>
> *En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.*

Por otro lado, el acápite (6) del inciso (a) del Art. 3 de la Ley de la Junta de Libertad bajo palabra fue enmendado para que dispusiera:

> *Podrá así mismo decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico que haya sido convicta conforme a las disposiciones de la Ley 146-2012, conocida como "Código Penal de Puerto Rico de 2012" al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.*
> *…*
> *La Junta podrá considerar para la libertad bajo palabra a aquellas personas que hayan utilizado o intentado utilizar un arma de fuego ilegal en la comisión de un delito grave o su tentativa, según definido en la Ley 146-2012, según enmendada. La Junta podrá conceder el beneficio cuando se ha determinado reincidencia habitual por delitos no violentos al cumplir veinticinco (25) años de su sentencia de reclusión, pero no podrá conceder el beneficio cuando la persona haya resultado convicta por delitos de agresión sexual o pornografía infantil en cualquiera de sus modalidades, según definidos en la Ley 146-2012, según enmendada. Antes de conceder el beneficio, la Junta considerará todas las disposiciones contenidas en el Artículo 3-B de esta Ley y lo que contemplan en la Ley 22-1988, mejor conocida como la Ley de la "Carta de Derechos de Víctimas y Testigos de Delito", según enmendada, para garantizarle a las víctimas todos los derechos.*
> *[…]*

Adicionalmente, dispone la Sección 3 de la Ley Núm. 85-2022 que la referida ley aplicará de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada. También, dispone que las cláusulas de prohibiciones absolutas de libertad bajo palabra en los delitos de leyes penales especiales no serán aplicables al caso de menores juzgados y sentenciados como adultos cuando contravengan lo aquí establecido. Por último, la Sección 4 del referido estatuto establece que las disposiciones de la referida Ley prevalecerán sobre cualquier otra disposición de ley que no estuviera en armonía con lo establecido por el mismo.

-III-

El asunto planteado ante nuestra consideración nos requiere a resolver si un miembro de la comunidad correccional cuya convicción fue producto de infracciones tanto al Código Penal de 2004 como a la Ley de Armas de 2000 puede aprovecharse de las enmiendas a la Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118-1974, que surgieron como resultado de la aprobación de la Ley Núm. 85-2022. Luego de un minucioso análisis del expediente ante nuestra consideración y del derecho aplicable, resolvemos en la afirmativa.

Al evaluar el Código Penal de 2012, notamos que el mismo cuenta con una cláusula de reserva en su Art. 303, *supra.* En esencia, este artículo dispone que la conducta realizada con anterioridad a la vigencia del Código Penal de 2012 será evaluada conforme a las disposiciones del Código Penal de 2004 y de cualesquiera otras leyes penales especiales vigentes al momento de los hechos. Similarmente, al evaluar el Art. 7.25 de la Ley de Armas de Puerto Rico de 2020, 25 LPRA secc. 4671, notamos que este dispone que la conducta realizada con anterioridad a la vigencia de dicha Ley se regirá y juzgará conforme a las disposiciones de la Ley de Armas de 2000, Ley Núm. 404-2000. Ahora bien, el referido artículo hace hincapié en que todas las penas de reclusión que surjan como resultado de ambas leyes penales especiales pueden ser consideradas para la libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir 75% del término de reclusión impuesto. Por lo tanto, aunque la Ley de Armas de 2000 seguiría vigente en cuanto a la conducta proscrita, la misma no surtiría efecto alguno en las disposiciones relativas a la imposibilidad de que los convictos al amparo de sus diferentes artículos estén impedidos de cualificar para el beneficio de quedar en libertad bajo palabra.

Finalmente, al anterior análisis hay que añadirle las disposiciones de la Ley Núm. 85-2022, la cual aplican de manera retroactiva.

Con lo anterior presente, es forzoso concluir que las disposiciones de la Ley Núm. 85-2022 enmendaron aquellas contenidas en la Ley de Armas de 2000 que le impedían a los convictos por las disposiciones de esta Ley ingresar a la jurisdicción de la Junta de Libertad Bajo Palabra.[7]

Así las cosas, tenemos que en su comparecencia, la Oficina del Procurador General también concluyó que las disposiciones de la Ley Núm. 85-2022 le aplican a la pena del peticionario y nos solicita que devolvamos el caso ante nuestra consideración a la OCC. Según se desprende de los anejos a las comparecencias de las partes, el personal del mencionado foro administrativo alegó no haber recibido directriz específica en cuanto a cómo incorporar las disposiciones de la Ley Núm. 85-2022, pues, según se consignó en la documentación del trámite administrativo, la misma es contraria a múltiples leyes que inciden en sus actuaciones. Sin embargo, precisamente, esa fue la intención legislativa al aprobar dicha ley. Es decir, en la exposición de motivos del estatuto, el legislador reconoce que ciertos delitos conllevan sanciones consecutivas cuya sumatoria llega a acumular cientos de años de cárcel. Lo anterior, en algunos casos, sin la posibilidad de libertad bajo palabra. Por lo tanto, la Ley Núm. 85-2022 se aprobó para establecer una manera justa, retributiva y rehabilitadora que le permite a aquella persona

---

[7] Reconocemos que la redacción de la sección tercera de la Ley Núm. 85-2022 puede inducir a la conclusión de que las cláusulas de prohibiciones absolutas de libertad bajo palabra bajo leyes especiales anteriores permanecerían intactas, excepto en los casos de menores juzgados y sentenciados como adultos. No obstante, al analizar la sección cuarta de esta ley y la exposición de motivos de la misma, concluimos que la salvedad hecha por el legislador tuvo el propósito de ubicar nuestra jurisdicción en la misma posición que la federal. Véase lo resuelto por el Tribunal Supremo de los EE. UU. en los casos de *Roper v. Simmons*, 543 US 551 (2005), *Graham v. Florida*, 560 US 48 (2010), *Miller v. Alabama*, 567 US 460 (2012) y *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). En síntesis, se ha creado una diferencia entre los menores y los adultos, pues los primeros tienen una culpabilidad atenuada inherente a su desarrollo neuropsicológico, por lo que el máximo foro federal ha establecido que imposibilitar alguien que comete actos delictivos durante su minoría de edad es contrario a la prohibición contra castigos crueles e inusitados dispuesta en la Octava Enmienda de la Constitución Federal. Véase además la opinión disidente del Hon. Estrella Martínez en *Pueblo v. Chevalier*, 199 DPR 735 (2018).

convicta por diferentes delitos ser considerada para libertad bajo palabra al cumplir con la sentencia más onerosa relacionada directamente con algunos de los delitos por los cuales fue encontrado culpable.

Así las cosas, en cuanto al peticionario, resolvemos que le asiste la razón en cuanto a que es beneficiario de las disposiciones de la Ley Núm. 85-2022, pero, considerada la documentación que obra en el expediente, este debe cumplir la pena de 40 años impuesta por infringir el Art. 5.04 de la Ley de Armas de 2000. Ello, debido a que la Sección 1 de la Ley Núm. 85-2022 enmendó el Art. 308 del Código Penal de 2012 a los efectos de que cuando una persona sea hallada culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, esta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Lo anterior independientemente a que la ley en virtud de la cual la persona haya sido convicta sea el Código Penal de 2012 o una ley penal especial.

A la luz de lo antes esbozado, concluimos que la OCC cometió el error imputado por no tomar en consideración lo dispuesto por la Ley Núm. 85-2022. Adicionalmente, y en atención a la solicitud del Procurador General a los efectos de que devolviéramos el caso a la OCC para la correspondiente evaluación sobre si procede o no la reclasificación de custodia del peticionario, así lo ordenamos para que se proceda en dicho foro conforme a lo aquí resuelto, considerando, además, el resto de las normativas estatutarias y reglamentarias aplicables.

-IV-

Por los fundamentos que anteceden, revocamos la determinación administrativa impugnada y se ordena la devolución del asunto al CCT del DRC para su oportuna evaluación.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones